| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CASE NO. 4:17-CR-29 (3) |
| § | |
| MAXIM MCDERMOTT § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Maxim McDermott's ("McDermott") *pro se* Motion for Sentence Reduction (#126) pursuant to 18 U.S.C. § 3582(c)(1)(A), wherein McDermott seeks a reduction of his sentence on the basis of "other reasons," including alleged sentencing errors and his post-sentence rehabilitation and conduct. The Government filed a response in opposition (#130). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  Background

On February 8, 2017, an indictment was returned by a grand jury in the Eastern District of Texas charging McDermott and two codefendants with various offenses set forth in a twelve-count Indictment. He was charged in Counts Three, Five, and Seven with Bank Robbery and Aiding and Abetting, in violation of 18 U.S.C. §§ 2113(a) and 2. On May 23, 2017, McDermott pleaded guilty pursuant to a non-binding plea agreement to Count Seven of the Indictment. In the Statement of Facts in support of the Plea Agreement, McDermott admitted that he drove his codefendants to a bank to commit a robbery, one of the codefendants had a firearm that he discharged during the course of the robbery, he fled the bank with the codefendants who were in

possession of the money taken from the bank, and the bank's total loss was $5,942.98. On October 13, 2017, the court sentenced McDermott in accordance with Probation's recommendation to 78 months' imprisonment, followed by a 3-year term of supervised release. McDermott is currently housed at Federal Medical Center Fort Worth, located in Fort Worth, Texas ("FMC Fort Worth"). McDermott's projected release date is May 8, 2023.

II.   Analysis

    A.   Exhaustion

On December 21, 2018, President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior

to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United*

*States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, McDermott complied with the exhaustion requirement before filing the instant motion. Attached to McDermott's motion is his request to the warden where he is housed, dated July 28, 2020, and a completed Request for Administrative Remedy form, dated August 5, 2020. Attached to the Government's filing is the response of Warden Eric D. Wilson, dated October 16, 2020, denying McDermott's request for a sentence reduction because it "is not based on the criteria listed" for compassionate release/reduction in sentence. Probation's investigation revealed that, according to the BOP, McDermott has "exhaust[ed] the Administrative Remedies available for inmate[s] in the Federal Bureau of Prisons." Although McDermott complied with the exhaustion requirement, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to

be applied and a list of specific examples."); *see also* U.S. S<span>ENTENCING</span> G<span>UIDELINES</span> M<span>ANUAL</span> § 1B1.13 (U.S. S<span>ENTENCING</span> C<span>OMM</span>'<span>N</span> 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

    B.    <u>"Other Reasons" for Release</u>

As grounds for relief set forth in his motion, McDermott, age 30, does not claim that he has a serious medical condition or that his family has specific needs for a caregiver. He also makes no mention of COVID-19. Instead, McDermott contends that "other" extraordinary and compelling reasons exist that warrant his early release from prison. In support of his position, McDermott asserts the following: "his role in the offense/involvement was relatively minor," "he

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

never entered the bank property," "he never entered the bank," he "was not in possession of a firearm," he "self-surrendered," he is a "first-time offender," "the instant offense was aberrant behavior," "his traumatic childhood was not presented to the courts as a mitigating circumstance . . . [to] lessen[] the severity of his sentence," and he has been involved in "post-sentencing rehabilitative efforts and conduct" in prison.

The catch-all category of "other" extraordinary and compelling reasons specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief."). In this instance, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to McDermott for any "other" reason. In

exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to McDermott's situation.

McDermott maintains that his post-sentence rehabilitation and good conduct in prison, evidenced by a list of courses and programs he has completed, establish extraordinary and compelling reasons for early release. While the court may consider rehabilitation efforts, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3; *accord* 28 U.S.C. § 994(t); *see United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *accord United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."). Although the court finds McDermott's list of accomplishments to be commendable, his post-sentence conduct is insufficient to support a sentence reduction.

The remainder of McDermott's arguments are nothing more than an attempt to revisit determinations made years ago at the time of his sentencing in October 2017. McDermott's conviction and sentence became final when the deadline for filing an appeal expired in 2017. McDermott, however, neither filed an appeal nor sought habeas corpus relief. As the Government points out, "The principle of finality . . . is essential to the operation of our criminal justice

system." *Teague v. Lane*, 489 U.S. 288, 309 (1989). Recognizing the importance of finality, Justice Harlan stated in his concurring opinion in *Mackey v. United States*:

> No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing that a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation.

401 U.S. 667, 691 (1971). This principle of finality forecloses McDermott's current endeavor to circumvent the limitations on post-conviction relief by challenging determinations made at sentencing under the guise of a compassionate release motion. In short, McDermott has not presented any "other reasons" establishing extraordinary and compelling reasons meriting a reduction of his sentence.

The court further finds that a sentence reduction is not warranted in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020)("[C]ompassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)."). The nature and circumstances of McDermott's offense of conviction entail his commission of a bank robbery and aiding and abetting. On November 3, 2016, McDermott drove his two codefendants to Wells Fargo Bank, a federally insured bank in Frisco, Texas. One of the codefendants donned a mask, entered the bank, and robbed a teller a gunpoint. The codefendant fired two shots into the ceiling and instructed the teller to give him money. The teller, who feared for her life, removed $5,942.98 in United States currency from her tray and handed it to him. A bank patron was entering the bank when the codefendant pointed the gun at him and told him to "Look away." As the codefendant exited the bank, he fired two more rounds back at the bank and ran to the getaway

vehicle, where McDermott was waiting for him. McDermott was aware that his codefendant possessed a firearm, discharged the firearm, and intended to and did use the firearm during the commission of the bank robbery. McDermott also served as the driver for two prior armed bank robberies involving the same codefendants in Plano, Texas, in October 2016. On October 21, more than $5,700 were taken at gunpoint from BBVA Bank, and on October 25, more than $7,000 in currency were taken by gunpoint from Legacy Bank. According to his Presentence Investigation Report ("PSR"), McDermott loaded the firearm used at the Legacy Bank prior to the robbery. McDermott agreed to pay restitution to all three banks in his plea agreement. Thus, McDermott's aberrant behavior argument appears to be undermined by the fact that he participated in two other bank robberies before the offense of conviction. McDermott's sentencing disparity argument is similarly lacking, as one of his codefendants received a sentence of 430 months, far above the sentence of 78 months he received, and the other codefendant received exactly the same sentence of 78 months. At sentencing, the court did not grant, nor did Probation recommend, a sentence adjustment based on McDermott's role in the offense. In addition, although McDermott's attorney raised his purportedly difficult childhood as a ground for departure at sentencing, Probation pointed out that pursuant to U.S.S.G. § 3553(a)(1), "lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds for imposing a sentence outside the applicable guideline range."

     Although McDermott has no prior convictions as an adult, he was convicted as a juvenile of assault causing bodily injury to a family member and theft of property. According to his PSR, McDermott also has a history of substance abuse, involving his use of unprescribed hydrocodone from age 18 until his arrest at age 26, contrary to his assertion in his motion. Further,

9

McDermott's Male Custody Classification Form, attached to his motion, indicates under the Public Safety Factors section that he was convicted of the greatest severity offense and under the Severity of Current Offense section, he received a score of 7, the greatest level of severity. Under the circumstances, the court cannot conclude that McDermott would pose no danger to the safety of any other person or to the community if released from prison at this juncture.

In addition, granting McDermott compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the United States Court of Appeals for the Fifth Circuit found that the district court did not abuse its discretion in denying compassionate release to a defendant due to the defendant's not yet having served a significant portion of his sentence. *Id.* at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id*. In the instant case, releasing McDermott after he has served only approximately 56% of his sentence, would similarly minimize the impact of his crime and the seriousness of his offense. In sum, McDermott has failed to satisfy his burden of showing the necessary circumstances to warrant a sentence reduction under the statutory framework to which the court must adhere.

III.   Conclusion

In accordance with the foregoing analysis, McDermott's *pro se* Motion for Sentence Reduction (#126) is DENIED.

SIGNED at Beaumont, Texas, this 30th day of December, 2020.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE